Michael K. Mehr   SBN: 71925
100 Doyle St. #A
Santa Cruz, CA 95062
T: (831) 425-5757
MMehr51@gmail.com

Nicole R. Gallagher    SBN: 248770
4455 Morena Blvd. #213
San Diego, CA  92117
T: (619) 519-3667
MsGallagherEsq@gmail.com


Attorneys for Debtor, BONNIE SATO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| IN RE, Bonnie C. Sato,<br><br>　　　　Debtor,<br><br>Wells Fargo Bank, NA Successor by Merger to Wells Fargo Bank Southwest, NA F/K/A Wachovia Mortgage FSB,<br><br>　　　　v.<br><br>Bonnie C. Sato;<br><br>　　　　Debtor. | Case No.:   **11-58090**<br><br>**BONNIE SATO'S OPPOSITION TO WELLS FARGO'S MOTION FOR RELEIF FROM STAY**<br>**Date: Oct. 4, 2011**<br>**Time: 3:00 p.m.**<br>**Room: 3070** |

## INTRODUCTION AND PROCEDURAL CONTEXT

. Well Fargo conducted a foreclosure sale on debtor's residence in Carmel on January 21, 2011 and obtained a Trustee's Deed Upon Sale on January 31, 2011. Debtor filed bankruptcy under Chapter 13 of the U.S. Bankruptcy Code on  August 29, 2011. **Wells Fargo seeks relief from stay to continue with an unlawful detainer action against debtor**. **Debtor seeks to set aside the foreclosure sale for major irregularities in the non-judicial foreclosure and for fraud and deceptive and unfair practices.**

**Debtor is willing to provide adequate protection payments pending the court's determination of the merits of debtor's claims and moving party's defenses**.

Debtor maintains that the foreclosure sale is **void** because of major irregularities in the non-judicial foreclosure sale, violation of the Settlement Agreement in a Class Action In Re: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation, Case No. M:09-CV-2015-JF, and because of fraud and unfair and deceptive practices. **There is presently pending a federal court law suit in the Northern District of California, San Jose Division, to have the foreclosure sale cancelled and set aside** (Bonnie C. Sato v. Wachovia Mortgage FSB; Wells Fargo Bank; NDEX WEST LLC et al., Case No: CV11-0810-EJD, filed January 18, 2011) (See Exhibit A, attached to Bonnie Sato's Declaration).

## II.

## PROCEDURAL ISSUES

**This Court's attention is directed to the decision of *In re Salazar*, 448 B.R. 814 (Bkrtcy.S.D.Cal. 2011)(J. Mann) as to how to approach this case <u>procedurally</u>—not as to the merits. This case is procedurally on all fours with the case at bar**.

In *In re Salazar*, the debtor also filed bankruptcy after a foreclosure sale and, as in the case at bar, the lender who obtained a trustee's deed after sale sought relief from stay to pursue or continue an unlawful detainer.

<u>The court in *In re Salazar* denied relief from stay, without prejudice, but continued the matter for a status conference to determine (a) adequate protection payments pending further proceedings, and (b) whether the debtor's claim that the foreclosure was void would proceed in bankruptcy court or another court.</u> The Court stated in *In re Salazar*:

> <u>If U.S. Bank's foreclosure sale was invalid, Salazar has an interest in the Property which militates in favor of continuing the stay.</u> If U.S. Bank was not authorized to foreclose the DOT under Civil Code section 2932.5, the foreclosure sale may be void, and Salazar would not need to tender the full amount of the Loan to set aside the sale. *Bank of America, N.A. v. La Jolla Group II,* 129 Cal.App.4th 706, 710, 717, 28 Cal.Rptr.3d 825 (5th Dist.2005) (void foreclosure sale required rescission of trustee's deed

OPPOSITION TO MOTION FOR RELIEF FROM STAY
*IN RE, Bonnie C. Sato*
--

returning title to the status quo prior to the foreclosure sale); *Dimock v. Emerald Properties,* 81 Cal.App.4th 868, 874, 97 Cal.Rptr.2d 255 (4th Dist.2000) (sale under deed of trust by former trustee void, and tender of the amount due is unnecessary). <u>In this event, Salazar could potentially restructure the Loan and reorganize his financial affairs in his chapter 13 case</u>. The Court emphasizes however, that U.S. Bank's defenses to Salazar's Civil Code section 2932.5 claim must be resolved either in state court or in another proper proceeding as these defenses are not before the Court.

*Id*. at 819. [Emphasis Added]

**The Court in *In re Salazar* decided to deny relief from stay pending a determination of whether the foreclosure sale was void, subject to an adequate protection order**, on the following basis:

### 1. *Effective Administration of the Estate*

<u>Maximizing the opportunities for reorganization of the estate is the most important factor in determining whether to grant relief from stay to permit litigation in another forum to proceed.</u> *Conejo,* 96 F.3d at 353. Salazar, in his chapter 13 case, seeks to regain title to the Property by invalidating the foreclosure sale and curing the default on the Loan to U.S. Bank. Salazar's reorganization could be thwarted if the Court allows the foreclosure issues to proceed before it determines whether there is equity in the Property, or whether Salazar can restructure U.S. Bank's debt in his reorganization.

### 2. *Prejudice to the Parties*

<u>Denying relief from stay at this time is the least prejudicial option for both parties</u>. Even if the stay prohibits U.S. Bank from regaining possession of the Property in the near term, that inconvenience is appropriate because the foreclosure process was flawed. The Court has scheduled a further hearing on relief from stay to determine the economic feasibility of Salazar's plan, and also to order that adequate protection payments be made to U.S. Bank to prevent diminution of the value of its collateral. 11 U.S.C. §§ 361, 363(e) (2011); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 370, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (adequate protection payments can protect valid interests of creditors).

> In contrast, Salazar could be substantially prejudiced by loss of his property interest if the unlawful detainer action proceeded even though the foreclosure sale may be void. Salazar has established a prima facie case of ownership of the Property, subject to whatever defenses U.S. Bank might bring in the state court proceeding. These rights should be protected by the automatic stay, assuming U.S. Bank's economic interests in the Loan are adequately protected.
>
> ### 3. *Considerations of Judicial Economy*
>
> Challenges to U.S. Bank's foreclosure sale are simultaneously pending in state and bankruptcy court, creating the potential for confusion and a waste of judicial resources. Even if not specifically raised in the unlawful detainer proceeding, the validity of the foreclosure sale could be decided by default. *Cheney v. Trauzettel,* 9 Cal.2d 158, 69 P.2d 832 (1937); *Seidell v. Anglo–California Trust Co.,* 55 Cal.App.2d 913, 920, 132 P.2d 12 (3d Dist.1942) (challenges to foreclosure sales are barred if not raised in unlawful detainer action). Maintaining the automatic stay until the Court can hear U.S. Bank defenses, and can assess Salazar's reorganization prospects, preserves judicial resources.

*Id*. at 825-826. [Emphasis added].

**The procedural context of the case at bar—and the reasons for denying relief from stay—are almost identical with the procedural posture in *In re Salazar*, *supra*. The Court should resolve this case in a similar fashion.**

**Debtor is prepared to make adequate protection payments pending a determination of the merits of her claim and the defenses of moving party**. **The residence of the debtor has a fari market value of $1,251,000 per Zillow.com (See Exhibit I attached to declaration of Bonnie Sato), and the amount owed to Wells Fargo as of the date of the Trustee Sale was $1,108,605.17. (See Moving Party's Exhibit 1). Thus, there is an equity cushion in the property**.

II.

**MERITS OF DEBTOR'S CLAIM**

## A. NDEX WEST WAS NOT TRUSTEE OF RECORD WHEN NOTICE OF DEFAULT RECORDED

On June 28, 2010, a Notice of Default (Exhibit C attached to debtor's declaration) was recorded with the Monterey County Recorder's office, but at the time of the recording NDEX WEST *was not the Trustee of the Wells Fargo deed of trust.*

On or about August 13, 2010, a Substitution of Trustee's was recorded by Defendant NDEX WEST, well after the invalid Notice of Default. (Exhibit D attached to debtor's declaration). Filing a Substitution of Trustee *after* a void Notice of Default does not thereafter make the Notice of Default suddenly valid. NDEX WEST also sent a version of the Substitution of Trustee to Debtor, but this version does not carry a stamp of recordation from the Clerk & Record's Office of the county in which it was recorded. (Exhibit E attached to debtor's declaration).

Pursuant to the requirements of California Civil Code § 2924(b) a Creditor

"**must send**, by registered or certified mail with postage prepaid, a copy of the notice **with the recording date shown thereon within 10 business days following recordation**." (emphasis added).

Neither WELLS nor NDEX WEST provided the recorded copy of the Substitution of Trustee (Exhibit D attached to debtor's declaration) or of the Notice of Trustee's Sale (attached as Exhibit G to debtor's declaration). The versions sent to Debtor are unsigned and completely lacks any date of recording. Again, WELLS and NDEX WEST's recordings completely fail to strictly comply.

On or about September 30, 2010, NDEX WEST recorded a Notice of Trustee's Sale. (Exhibit G attached to Dec. of Bonnie C. Sato). Debtor also never received a recorded version of the Notice of Trustee's Sale as required by California Civil Code § 2924(b).

**WELLS and NDEX WEST have printed up and sent out documents to Debtor that purport to be valid Notices, and then have proceeded to change the documents to reflect proper compliance after the fact. WELLS then records the altered documents to show that**

**it has "duly perfected title" – through nothing other than fraud and total non-compliance with non-judicial requirements.**

The Notice of Trustee's Sale was not preceded by a valid Notice of Default and therefore also not in strict compliance with California's non-judicial foreclosure requirements.

Debtor was never contacted by any representative of the WACHOVIA prior to the September 30, 2010 Notice of Sale, regardless of the declaration attached to that notice stating otherwise.

WELLS and NDEX WEST did not and do not have the legal right to foreclose as real parties in interest as a result of their failure to properly record transfers and assignments of rights; resulting in invalid Notice of Default, Notice of Trustee Sale which proceeded to wrongful foreclosure and now attempts to evict Debtor which cannot be continued. All recordings and notices have failed to strictly comply.

California non-judicial statutes require **strict compliance**. Because NDEX WEST was not the Trustee at the time it recorded the Notice of Default, the Notice of Default is void, as well as all of the Notices thereafter because they were based upon a void notice which was not in compliance with California law that must be strictly complied with.

The harshness of non-judicial foreclosure has been recognized. "the exercise of the power of sale is a harsh method of foreclosing the rights of the grantor." Anderson v. Heart Federal Savings Bank (1989) 208 Cal.App3d. 202, 215 reh'g denied and opinion modified (Mar. 28, 1989). The statutory requirements are intended to protect the trustor from a wrongful or unfair loss of his property, Moller v. Lien (1994) 25 Cal.App.4th 822, 830; accord, Hicks v. E.T. Legg & Associates, (2001) 89 Cal.App.4th 428, 220, and a valid foreclosure by the private power of sale requires *strict compliance* **with the** requirement so the statute. Miller & Star, California Real Estate (3d ed.), Deeds of Trust and Mortgages, Chapter 10 § 10.179; Anderson v. Heart Federal Savings Bank (1989) 208 Cal.App3d. 202, 211 reh'g denied and opinion modified (Mar.

28, 1989); Miller v. Cote, (4th Dist. 1982) 127 Cal.App.3d 888, 894; System Inv. Corp. v. Union Bank (2d Dist. 1959) 175 Cal.App3d 137, 152-153.

It has been a cornerstone of foreclosure law that the statutory requirements, intending to protect the trustor from a wrongful or unfair loss of the property, must be complied with strictly. Miller & Star, California Real Estate (3d ed.), Deeds of Trust and Mortgages, Chapter 10 § 10.182. Anderson v. Heart Federal Savings Bank (1989) 208 Cal.App3d. 202, 211, reh'g denied and opinion modified (Mar. 28, 1989). Miller v. Cote, (4th Dist. 1982) 127 Cal.App.3d 888, 894; System Inv. Corp. v. Union Bank (2d Dist. 1959) 175 Cal.App3d 137, 152-153; Saterstrom. V Glick Bros. Sash, Door & Mill Co., (3d Dist. 1931) 118 Cal.App 379.

**B. Defendants Did Not Have the Legal Right to Foreclosure on the Property Per the Statutory Requirements of Cal. Civ. Code §2923.54**

The Notice of Trustee's Sale is defective per Cal. Civ. Code §2923.54. Section 2923.54 requires a Notice of Sale to include a specific declaration from the loan servicer stating whether it "has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the Notice of Sale is Filed," and whether the longer timeframe for giving notice specified in Section 2923.52(a) does not apply pursuant to Section 2923.52 or 2923.55. CAL. CIV. CODE § 2923.54(a)

Pursuant to California Civil Procedure Code § 2015.5, however, whenever any law requires something to be supported by a sworn declaration, such matter may instead be supported by an unsworn declaration if it recites that it is certified or declared "to be true under penalty of perjury," is "subscribed" by the declarant, and "(1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California." In other words, without meeting these requirements, a statement cannot be qualified as a legal "declaration" as required by Section 2923.54. *See* Kulshrestha v. First Union Commercial Corp., 33 Cal. 4th 601, 606 (2004).

Presently, although the Notice of Sale included a statement titled "Declaration Pursuant to California Civil Code Section 2923.54" from Jaime Gonzalez the "Vice President" of

WACHOVIA, it was not signed under penalty of perjury as required by Cal. Civ. Proc §2015.5. Further, it did not state where or when the document was signed, nor does it certify that it is declared under the laws of the State of California. (See Exhibit G attached to debtor's declaration).

California's non-judicial foreclosure statutes are meant to be strictly complied with. If Defendants have failed to properly and completely comply with any requirements of non-judicial foreclosure proceedings, the foreclosure is invalid. Here Defendants have failed numerous items required of them to conduct a valid non-judicial foreclosure sale; Defendants failure to strictly comply renders their notices invalid as a matter of law. Additionally, any trustee's sale based on a statutorily deficient Notice of Trustee Sale is invalid. Anderson v. Heart Federal Savings Bank (1989) 208 Cal.App3d. 202, 211 reh'g denied and opinion modified (Mar. 28, 1989). The California Sixth District Court of Appeal observed, "Pursing that policy [of judicial interpretation], the courts have fashioned ruled to protect the debtor, one of them being that the notice of default will be strictly construed…" Sweatt v. The Foreclosure Co., Inc., (6th Dist 1985) 166 Cal.App.3d 273, 278.

The courts will set aside a foreclosure sale when there has been fraud, when the sale has been improperly, unfairly or unlawfully conducted, or when there has been such a mistake that it would be inequitable to let it stand. Bank of America Nat. Trust & Savings Ass'n v. Reidy, (1940) 15 Cal.2d 243, 248; Whitman v. Transtate Title Co., (4th Dist. 1985) 165 Cal.App.3d 312, 322-323; In re Worchester, (9th Cir. 1987) 811 F.2d 1224, 1228.

"Wrongful foreclosure" includes anything less than strict compliance with California's non-judicial foreclosure procedures. California's procedures of non-judicial foreclosure are simple and straightforward. These institutions hold themselves out to be sophisticated financial entities, knowledgeable in the origination and servicing of home loans. They are all business entities registered with the Secretary of State and have availed themselves of the rights and protections of California's laws. Compliance is not difficult and should have become second nature to these institutions long ago. The fact that they are not compliant by now suggests something very sinister.

### C. RIGHTS AS CLASS C MEMBER OF CLASS ACTION SETTLEMENT APPROVED BY DISTRICT COURT

Debtor is also a Class C member of the settlement in the "Pick a Payment" Wachovia class action suit, filed in this district, case # 5:09-md-02015-JF in that she obtained her loan with WACHOVIA (now acquired by Wells) in January 2008. The attorney for Wells in the federal court litigation with debtor was made aware of the class action litigation prior to foreclosing on debtor's property. There was a preliminary settlement approval on December 22, 2010 over a month before the foreclosure sale. (See Exhibit "A" attached to this Opposition). WACHOVIA did not abide by the preliminary settlement approval. Wells was at all times relevant been aware that debtor is a member of the class included in this class action, but refused to offer debtor a loan modification and refused to postpone foreclosure on debtor's home during the class action litigation in order to divest debtor of her equity in the property and obtain it for its own profit and use.

### D. OTHER GROUNDS

Debtor incorporates all other grounds of her First Amended Complaint now pending in federal district court in San Jose. This complaint alleges—in addition to the matters set forth above, that there was a pattern and practice of unfair and deceptive business practices, misrepresentation, fraud, and concealment during the foreclosure process.

IV.

**Motion for Relief from Stay**

WELLS is at no risk of losing its' alleged property if relief from stay is not granted. The property sought through the relief is a personal residence. Debtor still resides in the home and has lived there since 1986.

The court should order the automatic stay continued in effect pending conclusion of the final hearing on the motion if there is "a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such a final hearing." 11 U.S.C. § 362(e). Debtor has filed federal litigation against WELLS in matters directly related to the estate and her petition for Chapter 13 bankruptcy. If Debtor's federal complaint and the allegations contained therein are taken in a light most favorable to Debtor as is required, then Debtor, by and through her federal litigation has shown that there is more than a reasonable likelihood that she will prevail in a final hearing on the same matter in bankruptcy court.

### I. The Property is Adequately Protected Under § 362(d)(1)

The subject property is currently valued at about $1,251,000 (Exhibit C attached to Dec. of Bonnie C. Sato). WELLS Trustee's Deed Upon Sale alleges that WELLS took the property back for $1,108,605.17 (Exhibit 1 attached to Motion for Relief from Stay). WELLS is clearly over-secured. United Sav. Ass'n of Texas v. Timbers of Inwood Forrest Assocs., Ltd., (1988) 484 US 365, 371-380.

Further, the subject property value has not seen a steep decline in value, as have many other properties in the state. The subject property is located in an affluent area that has not been affected by the drastic dip in real estate that has been seen elsewhere – the equity Debtor held in the property more than evidences this fact. WELLS currently has an equity cushion of more than $150,000.00, more than enough to offset any amount WELLS anticipates for decline in property values. Even without the adequate protection and equity cushion WELLS currently enjoys, adequate protection payments would be much more appropriate in the present situation, rather than allowing WELLS to continue with eviction done through a wrongful foreclosure sale which will irreparably damage the both the Estate and Debtor. In Re Mellor, (9th Cir. 1984) 734 F2d 1396, 1401.

Debtor filed litigation against WELLS FARGO in January of 2011 and concurrently filed and recorded a Lis Pendens (Exhibit D attached to Dec. of Bonnie C. Sato). Not only is WELLS' alleged interest in the property adequately protected; Debtor's interests in the property

protect it so much that WELLS is unable to sell it to a bona-fide purchaser with the Lis Pendens in effect; WELLS cannot do anything with the property until litigation has been heard on the merits.

WELLS also alleges that it is paying property taxes and insurance on the property (¶ 5 of WELLS' Motion for Relief). Debtor has never ceased paying the property taxes and insurance herself. WELLS has not many any insurance payments on the property. Exhibit B attached to Declaration of Bonnie C. Sato, is the last six months of payment history for property insurance from Debtor's checking account.

WELLS allegation that it is losing income on the subject property fails because of the Lis Pendens; which prevents WELLS from selling the property to any bona-fide purchaser until it deals with Debtor's litigation. Unless WELLS FARGO BANK has suddenly become a rental property management company, renting out wrongfully foreclosed homes, there is no way WELLS can argue it is losing money by not being able to evict Debtor from the property.

Debtor objects to WELLS' Motion for Relief from Stay based on 11 USC § 362(d)(1), (2) and (4). WELLS' failed to show facts that rise to a level sufficient to shift the burden of proof onto Debtor. WELLS is over-secured on the debt and more than adequately protected. WELLS can not make any argument that it continues to take a loss on the property in the form of paying taxes and insurance because it does not. And WELLS cannot show that it would make any income on the property if relief is granted because Debtor has a pending litigation with a Lis Pendens attached. Debtor has never filed a petition for bankruptcy before and has no intent to hinder or delay.

**II. The Property Holds Equity & The Estate Cannot be Effectively Reorganized without It Per § 362(d)(2)**

It is undisputed that at the time of wrongful foreclosure sale there was significant equity in the subject property. WELLS Trustee's Deed Upon Sale shows a value of $1,108,605.17 and the property currently appraises for well over $1.25 million (Exhibit C, attached to Dec. of Bonnie C. Sato).

OPPOSITION TO MOTION FOR RELIEF FROM STAY
*IN RE, Bonnie C. Sato*
--

Debtor has equity in the property and has contested WELLS allegation of title since prior to WELLS' wrongful foreclosure. As evidenced by Debtor's filing of litigation against WELLS for the invalid notices, wrongful foreclosure, and a litany of other violations (RESPA, TILA and other federal and state laws). Debtor's federal First Amended Complaint is more than sufficient to show that she has equity in the property and that WELLS is attempting to abscond that equity – which now belongs to the Estate.

Further, this property is absolutely necessary for effective reorganization. Debtor is informed and believes that this property held around $150,000.00 plus, in equity at the time of sale. WELLS seeks relief in order to attempt to collect on equity that now belongs to the estate and is under the jurisdiction of the United States Trustee. Effective reorganization of the estate without the subject property of Debtor's home is impossible.

WELLS has failed to meet its burden of proof to show that Debtor does not hold equity in the property and the estate cannot be effectively reorganized without the residence included.

### III. Debtor's Petition is Not Part of a Scheme to Delay or Hinder per § 362(d)(4).

Debtor's Chapter 13 petition is not part of a scheme to delay, hinder and/or defraud WELLS. Debtor has, as stated above, disputed WELLS' practices and allegations of title to the property since prior to WELLS wrongful foreclosure. Debtor's petition did not involve any transfer of ownership of the real property without WELLS consent.

### CONCLUSION

**WELLS FARGO will suffer no cognizable hardship in being denied relief until further hearing are held on this matter with an adequate protection order**. The property is over-secured; WELLS cannot sell the property because of the Lis Pendens and can claim no loss of income therefore; and Debtor has not made her petition with any intent to hinder or delay.

WELLS cannot dispose of the property until dealing with Debtor's bankruptcy claims and litigation. WELLS' only purpose in moving the Unlawful Detainer action forward is to evict Debtor from her property. If WELLS does evict Debtor and attempts to thereafter sell the

home, WELLS is selling a property which held equity that belongs to the estate. Relief must be denied. Accordingly, denying relief from stay is necessary to effectively reorganize the estate.

Dated:  October 3, 2011          /s/ Michael K. Mehr
                                 Michael K. Mehr
                                 MMehr51@gmail.com
                                 Attorney for Debtor, BONNIE SATO

Case: 11-58090    Doc# 23    Filed: 10/04/11    Entered: 10/04/11 12:58:13    Page 13 of 13